JOHN J. HALSTEAD and JAMES W. HALSTEAD, as Sole Surviving Trustees of the Trust in Behalf of CHRISTINA HALSTEAD and Remaindermen Created in and by the Last Will and Testament of PEARSON S. HALSTEAD, Late of the City, County and State of New York, Deceased, Respondents, *v.* CHARLES L. ATTERBURY and Others, Appellants.

*Agreement between property owners, establishing the building line at a specified distance from the street — an exception as to corner lots covers corner lots created by the opening of a new street — effect of restrictive covenants contained in deeds executed by the parties to the original agreement — merger.*

March 1, 1859, Israel D. Walter and George W. Hinchman, who owned in severalty a number of lots in the city of New York located on the north side of Seventieth street between Third avenue and Fourth avenue, including one on the corner of Fourth avenue and Seventieth street, entered into an agreement whereby they covenanted and agreed "that the buildings hereafter to be erected on their lots on the northerly side of 70th Street * * * shall be set back 10 feet from the northerly line of said street, so as to leave a courtyard of that depth" unobstructed; that all conveyances or mortgages, leases or other instruments made by either of the parties should contain a reference to the agreement and the subject thereof.

Such agreement contained the following clause: "But this agreement is not to apply to the lots on the *corners* of 70th Street and any intersecting avenue nor to lots fronting on the avenues between 70th and 71st Streets, nor to the lot on 70th Street, distant 100 feet east of 4th Avenue."

At the time the agreement was made there was no avenue between Third and Fourth avenues, but Lexington avenue was thereafter opened. After the opening of Lexington avenue, one Clark, who had acquired the lots formerly owned by Walter, laid out said lots in suchwise that they faced on Lexington avenue instead of upon Seventieth street. A building was constructed on the lot at the northeast corner of Lexington avenue and Seventieth street, the southerly wall of which was on the street line of Seventieth street.

Prior to the opening of Lexington avenue Walter conveyed two of the lots mentioned to Clark by a deed containing a covenant on Clark's part that all buildings erected upon the lots should be set back at least ten feet from the northerly side of Seventieth street. Before making this conveyance, Walter had conveyed two other lots by a deed containing no restrictions whatever and after executing such deed he or his executrix conveyed to Clark all of the remaining lots.

*Held,* that the use of the word "corners" in the agreement between Walter and Hinchman indicated that the parties contemplated the opening of Lexington avenue, and that the restriction contained in such agreement did not apply to the lot on the northeast corner of Lexington avenue and Seventieth street;

That Walter, by inserting the restrictive covenant in the deed to Clark of the two lots above mentioned, did not intend to impose a new restriction, but simply to subject such lots to the original restriction agreement between him and Hinchman;

That the restrictive clause in the deed from Walter to Clark was, consequently, to be construed in the same manner as the restrictive covenant in the agreement between Walter and Hinchman;

That, moreover, when Walter conveyed to Clark all his remaining lots, the restrictive covenant contained in the deed to Clark became extinguished.

APPEAL by the defendants, Charles L. Atterbury and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 8th day of May, 1905, upon the report of a referee directing the specific performance of a contract for the sale of real estate.

*Charles L. Atterbury*, for the appellants.

*Abel E. Blackmar*, for the respondents.

Judgment affirmed, with costs, on the opinion of the referee.

Present — PATTERSON, O'BRIEN, INGRAHAM, McLAUGHLIN and LAUGHLIN, JJ.

The following is the opinion of DAVID B. OGDEN, Esq., Referee:

OGDEN, Referee:

This is an action for the specific performance of a contract for the conveyance by the plaintiffs to the defendants of property upon the northwest corner of Lexington avenue and East Seventieth street in New York city, having a frontage of thirty feet five inches on Lexington avenue, and a depth of eighty feet.

Upon these premises there is erected a dwelling house four stories in height, which stands substantially upon the building line of Lexington avenue, and the southerly wall of which stands substantially ten feet north of the northerly building line of East Seventieth street.

The defendants object to the title on the ground that the premises are subject to certain restrictions imposed upon them by deeds of former owners.

These restrictions were imposed as follows:

*First.* On the 1st day of March, 1859, Israel D. Walter and George W. Hinchman were the owners of certain lots on the north-

erly side of Seventieth street between Third and Fourth avenues, which formerly were part of the common lands of the city of New York. Walter owned thirteen lots numbered consecutively from 10 to 22 on the Common Lands map, commencing 350 feet east of Third avenue and running westerly 325 feet. Hinchman owned four adjoining lots on the west, and Walter again owned one lot on the north side of Seventieth street, 100 feet east of Fourth avenue, and another lot facing on Fourth avenue and Seventieth street, having a dimension of 25 feet on Fourth avenue and 100 feet on Seventieth street. Neither Hinchman nor Walter owned any other property upon the north side of Seventieth street between Third and Fourth avenues on the said 1st day of March, 1859. On that day they executed an agreement which is before me as Plaintiff's Exhibit 2. This agreement recited that the parties were the owners respectively of certain lots on the northerly side of Seventieth street between Third and Fourth avenues, and " do covenant and agree that the buildings hereafter to be erected on their lots on the northerly side of 70th Street * * * shall be set back 10 feet from the northerly line of said street, so as to leave a courtyard of that depth " unobstructed; that all conveyances or mortgages, leases or other instruments made by either of the parties should contain a reference to the agreement and the subject thereof, and then follows the following exception :

" But this agreement is not to apply to the lots on the corners. of 70th Street and any intersecting avenue nor to lots fronting on the avenues between 70th and 71st Streets, nor to the lot on 70th Street distant 100 feet east of 4th Avenue."

Now, at the time this agreement was made, there was no avenue between Third and Fourth avenues. Lexington avenue at that time had not been extended north of Sixty-sixth street, which was its legal termination upon the city maps. In 1868, however, the common council of the city of New York authorized the corpora-tion counsel to apply to the Legislature for an act authorizing the extension of Lexington avenue through to Ninety-seventh street, and such an act was procured. (Laws of 1868, chap. 885.*)

Thereafter, in pursuance of the authority conferred upon the city

---

* Bound in Vol. 1 of Session Laws of 1869, p. 3.—[REP.

FIRST DEPARTMENT, JUNE, 1905. [Vol. 105.

authorities by that act, Lexington avenue was opened in a prolongation of its former line to the southerly side of Ninety-seventh street, and it thereafter was worked, and is now and has been for many years one of the legal streets of the city of New York.

The title of the plaintiffs' testator is derived by deeds from Walter, none of which deeds refer in any way to the said restriction except as I shall mention hereafter.

After Lexington avenue had become legally one of the streets of New York, and had been opened, one Clark, who was then the owner of all the property which Walter had owned on September 20, 1865, west of Lexington avenue as so opened, being lots 14, 15, 16 and so much of 17 as was not taken for the opening of Lexington avenue, laid out his said property in lots facing upon Lexington avenue instead of upon Seventieth street. The owners of the lots east of Lexington avenue, which had formerly belonged to Walter, did the same, and the property on both sides of Lexington avenue, south of the center line between Seventieth and Seventy-first streets, is now improved substantially with buildings facing on the avenue. The building erected at the northeast corner of Lexington avenue and Seventieth street has its southerly wall on the street line of Seventieth street. All the property which was covered by the restrictions contained in the agreement between Hinchman and Walter has been improved. The property which lies between the premises in question and the land 125 feet east of Fourth avenue is set back from the street substantially 10 feet in accordance with the terms of the restriction.

The plaintiffs claim that as soon as Lexington avenue was laid out, the exception which I have noted in the restriction agreement between Walter and Hinchman became operative, and when the property included in lots 14, 15, 16 and so much of 17 as was not taken for the avenue was laid out into lots having a frontage upon Lexington avenue, instead of Seventieth street, they no longer were subjected to the restrictions. It seems to me fairly plain that this was the intention of Walter and Hinchman. The agreement says it is not to apply to lots on the corners of Seventieth street and any intersecting avenue. At the time of the agreement made, the property affected was not intersected by any avenue. The words must, therefore, have been used in contemplation of the probability that

Lexington avenue or some similar avenue would be laid out between Third and Fourth avenues. Otherwise, the words were meaningless.

Again, there was no lot on the corner of Seventieth street affected by the restriction unless it should be the lot on the corner of Fourth avenue. But the word "corners" is used, indicating that it must have been the intention to exempt more than one lot in the designation of lots on the "corners."

I think, therefore, that the property in question is no longer subject to the restrictions contained in the agreement made between Walter and Hinchman.

*Second.* The second restrictive agreement which the defendants contend still applies to the premises in question was contained in a deed, dated September 20, 1865, and made by Mr. Walter to Mr. Clark. This deed contained covenants on the part of Clark with Walter, his executors and administrators, that all buildings which might at any time thereafter be erected upon the lots above described, or any of them, should be set back at least ten feet from the northerly side of Seventieth street, and that such space of ten feet should be kept and used forever thereafter as a courtyard; this covenant to run with the land and to bind all future owners thereof.

The property conveyed by the deed which contained this covenant consisted of two lots, twenty-five feet wide each, being lots Nos. 16 and 17 upon the map of common lands. It will be noticed that it was made before Lexington avenue had been opened. At the time Walter made this conveyance, he had conveyed Nos. 14 and 15 by an instrument which made no reference to any restriction whatever, and he was still the owner of lots 18, 19, 20, 21 and 22, and no other property which had been affected by the agreement between him and Hinchman.

After the execution of this instrument Walter or his executrix conveyed all his remaining lots, viz., 18, 19, 20, 21 and 22, to the same Clark, who was the grantee who had made the covenant with respect to lots 16 and 17.

Now it seems to me that the intention of Walter in inserting the restrictions in the conveyance of lots 16 and 17 was not to impose a new restriction, but to comply with the covenant contained in his

agreement with Hinchman, that in any grant which he would subsequently make of the premises affected by that agreement, such a covenant would be inserted.

I think, therefore, that it was not the intention of Walter to reserve to himself the right to enforce this covenant for his own benefit, but merely to subject this lot to the original restriction agreement between him and Hinchman, and that this agreement is to be construed as I have construed the former agreement; that is, that it does not apply to any land which subsequently came to be embraced in lots facing upon an avenue. Moreover, when Walter conveyed to Clark all his remaining property, the covenant contained in the deed to Clark, so far as it constituted an equitable easement upon the property affected by it, became extinguished because Clark became the owner of the only property which could be said to be the dominant estate. After Walter had conveyed the balance of his land to Clark, the right to enforce the covenant made by Clark against Clark's grantees in respect to lots 16 and 17, either at law or in equity, was gone.

Clark, in the deed conveying the premises in question with others to the plaintiffs' testator, sold the property subject to the restrictions contained in the agreement between Hinchman and Walter, if they should apply, and also to covenants contained in his deed from Walter.

I do not think that this gave the restrictions any greater force or effect than that which I have concluded they possessed prior to that deed. The object of Clark was manifestly to exempt himself from the liability under the covenants of warranty contained in his deed. At the time he made this deed he owned no other property in the block, and in the deeds which he had given of the properties which he had purchased from Walter there were no restrictions whatever.

For these reasons, it appearing that there are no other objections to the title than those which I have discussed, I think that the title tendered to the defendants by the plaintiffs, as admitted in the answer and on the record before me, is a good and marketable one, and that the plaintiffs are entitled to a judgment for specific performance, but under the stipulation made upon the minutes, without costs; the form of the judgment may be settled before me, or agreed upon by the parties.